

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY EDWARD WHITINGTON, | § | |
| | | No. 08-13-00102-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 432nd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee. | § | |
| | | (TC#1284003R) |
| | § | |

## OPINION ON REHEARING

In denying Appellant's *ex post facto* claim, we held that Appellant was required to show that the statute itself operates retroactively, not that the trial court applied it retroactively. We based our holding on *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex.Crim.App. 2002), in which the Court of Criminal Appeals concluded there was no *ex post facto* violation because the appellant failed to show, or argue, that a statute itself operated retroactively, but rather complained only about the trial court's erroneous retroactive application of the statute in the jury charge. We noted that, like the statute in *Ortiz*, the continuous sexual abuse statute does not itself operate retroactively; indeed, the statute explicitly provides that it does *not* apply to acts of sexual abuse committed before its effective date of September 1, 2007. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 TEX. GEN. LAWS 1120, 1127, 1148. Therefore, we concluded that the error

1

that occurred in this case, in which the trial court allowed the jury to consider conduct occurring before the effective date of the statute, resulted from the trial court's erroneous application of the statute, which did not amount to an *ex post facto* violation.

On rehearing, Appellant contends that our holding conflicts with the United States Supreme Court decision in *Peugh v. United States*, __U.S.__, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). In particular, Appellant asserts that *Peugh* stands for the proposition that a trial court's improper retroactive application of a statute may violate the *Ex Post Facto* Clause. We disagree.

In *Peugh*, the defendant was convicted of five counts of bank fraud that occurred in 1999 and 2000. The trial court sentenced him to 70 months' imprisonment based on the Federal Sentencing Guidelines issued by the United States Sentencing Commission in 2009, rather than on the 1998 Guidelines that were in effect at the time he committed his offenses.[1] *Id*. at 2079. The defendant in *Peugh* contended that the trial court's application of the 2009 Sentencing Guidelines violated the *Ex Post Facto* Clause, and that he should have instead been sentenced under the 1998 version of the Sentencing Guidelines that were in effect at the time of his offenses. *Id*. at 2078.

The Supreme Court initially noted that the *Ex Post Facto* Clause only forbids the passage of ex post facto "laws"; as such, the Court questioned whether the Sentencing Guidelines had the force and effect of law for purposes of the *Ex Post Facto* Clause. *Id.* In answering this question in the affirmative, the Court initially pointed out that the Guidelines were promulgated by the United States Sentencing Commission, which, in turn, was created by Congress for the delegated purpose of adopting mandatory sentencing guidelines. *Id.* at 2079. The Court further noted that 18 U.S.C. § 3553(a)(4)(A)(ii) expressly instructs district courts to apply the Sentencing Guidelines

---

[1] The applicable sentencing range under the 1998 Guidelines was 30 to 37 months, while the sentencing range rose under the 2009 Guidelines to 70 to 87 months, making the low end of the 2009 Guidelines 33 months higher than the high end of the 1998 Guidelines range. *Id*. at 2078-79.

2

that are "in effect on the date the defendant is sentenced," rather than the Guidelines in effect at the time the defendant's offense was committed. *Id.* at 2081. Because the defendant in *Peugh* did in fact receive an increased punishment based on the trial court's application of the Commission's 2009 Sentencing Guidelines, which were adopted after he committed his offense, the Court held that this violated the *Ex Post Facto* Clause.

Appellant points out that in reaching this result, the Court in *Peugh* stated that the scope of the *Ex Post Facto* Clause "is not limited to legislative acts," and he believes that the Court thereby intended to expand the scope and applicability of the Clause to other non-legislative situations, such as when trial courts mistakenly apply laws retroactively. However, as the Texas Court of Criminal Appeals explained in *Ex parte Heilman,* 456 S.W.3d 159 (Tex.Crim.App. 2015), *Peugh* does not stand for this proposition.

In *Heilman*, the Court recognized that under the holding in *Peugh*, it is not just the legislature acting alone that may violate the *Ex Post Facto* Clause, and that executive agencies may also violate the Clause when they are exercising rule-making authority delegated to them by the legislature. *Id.* at 165 (noting that the legislature "cannot escape the strictures of either the Texas or federal *Ex Post Facto* Clause by mere delegation"). However, the Court in *Heilman* made it clear that *Peugh* did not expand the scope of the *Ex Post Facto* Clause to situations in which a trial court has simply erred by misapplying a law retroactively; instead, the Court explained that the error must have some "legislative origin" for the *Ex Post Facto* Clause to be invoked. In particular, the Court noted that *Peugh* requires courts to "look beyond the actor that is directly committing the alleged [ex post facto] violation for some legislative origin of the alleged violation – such as the enabling statutes of either the United States Sentencing Commission in

3

*Peugh*, or the state parole board in *Garner*."[2]  *Id.*  The Court concluded that "the Supreme Court's reasoning in *Peugh* reaffirms our holding in *Ortiz* that the *Ex Post Facto* Clause is 'directed at the Legislature, not the courts.'"  *Id.* at 165.

Applying this rationale, the Court in *Heilman* found that no e*x post facto* violation occurred where the trial court's conduct – in accepting a plea agreement that allowed a defendant to plead guilty to an otherwise time-barred plea offense – originated from the parties' plea negotiations, and did not derive from any law or rule enacted by the Legislature or a delegated body.  *Id.*

Similarly, in the present case, Appellant cannot point to any "legislative origin" for the error in the trial court's jury charge.   The erroneous jury charge did not arise from any law or rule promulgated by the Legislature or from any other legislative or executive body having delegated rule-making authority.   In fact, as stated above, the continuous sexual abuse statute itself explicitly disallows its *ex post facto* application, and the trial court therefore simply erred when it applied the statute in that manner.

As *Peugh* did not extend the scope of the *Ex Post Facto* Clause to judicial actions of this nature, we conclude that Appellant has not shown an *ex post facto* violation based solely on the trial court's erroneous jury charge in this case.   Appellant's motion for rehearing is denied.

STEVEN L. HUGHES, Justice

July 1, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[2] In *Garner*, the U.S. Supreme Court held that the retroactive application of a rule promulgated by a state parole board could arguably violate the *Ex Post Facto* Clause, as the Board operates under an "enabling statute" enacted by the Georgia Legislature, which allowed the Board to adopt such rules and to make determinations regarding a prisoner's release.  *Garner v. Jones*, 529 U.S. 244, 257, 120 S.Ct. 1362, 1371, 146 L.Ed.2d 236 (2000).